### Rubin, Appellant, v. Scheckter et al.
### Scheckter et al. v. Rubin, Appellant, et al.

Argued April 22, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*David S. Malis,* with him *Richard B. Malis* and *Bernard A. Illoway,* of *Illoway & Fischer,* for appellant.

*Michael A. Foley,* with him *Marshall A. Coyne,* for appellees.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, May 25, 1942:

Two bills in equity are before us, they were heard together in the court below and will be so disposed of here. The first was filed by I. Jerome Scheckter and others against David A. Rubin, and the second by Rubin against Scheckter and others. Both bills relate to the affairs of a partnership, trading under the name of Associate Tax Consultants. The bill in which Rubin is the defendant avers a partnership under an agreement dated January 3, 1940. The prayer of the bill is for a dissolution of the partnership and the appointment of a receiver to wind it up. The ground for the relief is the conduct of Rubin, which it is alleged made it impossible to carry on the partnership business. The bill filed by Rubin seeks to enjoin the defendants named therein from engaging in the business of tax accounting, in competition with Associate Tax Consultants, and from continuing to do business under the name Tax Associates. This bill is predicated upon the charge that Scheckter and another of the defendants, Fish, entered into a conspiracy to cheat and defraud Rubin, and to appropriate and convert his business to themselves, or to themselves and others. It is set forth that the agreement of January 3, 1940, which purports to transfer to Scheckter one-half of the interest which Rubin had in the partnership, was executed by Rubin on the representation of Scheckter and his partner in the practice of law, one Meltzer, that Scheckter was not in fact to be a partner, but that the agreement was to protect Scheckter and Meltzer for such fees as would be due them, when collected, for services which they had rendered in the past to clients of the Associate Tax Consultants. The chancellor, after hearing,

in which more than one thousand pages of testimony and exhibits were offered, entered a decree nisi, which became final by the action of the court in banc, dissolving the partnership and appointing a receiver to take charge of its affairs and to render an accounting. From this decree Rubin has appealed.

The brief filed by appellant, and the oral argument in his behalf, have covered much territory, both in fact and law, which is outside the domain of the limited field of controversy. We propose to confine this opinion solely to that field. Its bounds are restricted to this single inquiry: Was a valid partnership agreement executed between Rubin and Scheckter on January 3, 1940? We have no hesitation in holding, as did the chancellor and the court below, that such a valid and binding contract of partnership was entered into.

Rubin contends that he did not read the entire contract and did not understand it, and signed it under a misapprehension as to what its terms were. He claims that he was overreached by Scheckter, who he says was his attorney. He endeavors to invoke the principle, that dealings between attorney and client are not at arms length, and that such being the relation between him and Scheckter, the latter did not disclose those things to him which should have been disclosed and overreached him. The chancellor found as a fact, and the court in banc confirmed the finding, as do we, that attorney and client relation did not exist between Rubin and Scheckter, therefore the fact, to which it is sought to apply the principle, does not exist. As to the testimony of Rubin, that he did not read the entire agreement and did not understand its terms, the chancellor and the court in banc did not, and under the testimony, could not credit these statements. Rubin was carrying on a large and extensive business as a consultant and expert. It would tax credulity beyond all limit to conclude, that he would sign such an agreement without a full understanding of its terms, which are not at all difficult to comprehend. It recites that for fifteen years prior to October 16, 1939,

Rubin had engaged in accounting and tax practice and was the sole owner of the business, that on the day named, he entered into a partnership agreement with seven other persons, in which he transferred to each a 2½% interest in the business.* It sets forth that Scheckter desired to engage in the accounting and tax practice, in a non-legal capacity, in association with Rubin, and to refrain from the practice of law during the continuance of the agreement. In explicit terms it states that Rubin "does hereby agree to enter into a partnership agreement with I. Jerome Scheckter for the purpose of engaging in the accounting and tax practice" and that Rubin "does hereby transfer and assign to I. Jerome Scheckter a fifty (50%) per cent interest in his said entire interest, assets, profits, good will, rights and privileges reserved by David A. Rubin" under the prior agreement with his other associates, which amount to 82½% of the partnership assets. It states: "It is understood and agreed that David A. Rubin hereby transfers and assigns to I. Jerome Scheckter a fifty (50%) per cent interest in each and all of said assets, profits, good will and in any other assets, profits and good will which David A. Rubin may have by virtue of said [prior] partnership agreement." It recites that under the prior agreement, certain powers and rights were reserved to Rubin, and that "the above rights and powers retained and reserved by David A. Rubin are hereby vested equally in David A. Rubin and I. Jerome Scheckter." On Scheckter's behalf, it is stated that he agrees not to engage in the practice of law, and enters into a partnership with Rubin and his present partners. It provides that the withdrawal of either Rubin or Scheckter, or the death of either, shall effect a dissolution of the partnership, and that upon the dissolution, and the determination of the partnership interest of the other partners, all assets and

---

* In this agreement of October 16, 1939, Rubin reserved to himself the right to admit new partners and to control each partner's interest.

liabilities shall be divided 50% to Rubin and 50% to Scheckter. This agreement was ratified by Rubin three days later, on January 6, 1940, by an agreement by which Fish was admitted into the partnership. He was assigned by Rubin and Scheckter a 5% interest therein. Rubin informed his junior associates that Scheckter was a partner. He subsequently offered to buy Scheckter's interest for a large sum.

The chancellor found that, in the negotiations leading up to the execution of the contract between Rubin and Scheckter, they dealt at arms length and not as attorney and client. It was further found, that Rubin signed the agreement, after having read its contents, and after having fully appreciated its consequences, that the agreement was fair and conscionable, its provisions fully understood by Rubin, and its execution by him a full and intelligent act and not the result of influence by any person. The chancellor also found, on undisputed evidence, that subsequent to the execution of the contract Rubin ratified and confirmed it, by signing and swearing to four separate affidavits for registration of the business of the Associate Tax Consultants under the Fictitious Name Act, in which it is stated that Scheckter was a partner. In addition, he sent an announcement to all clients that Scheckter was a partner. Furthermore, he placed Scheckter in joint control of the finances of the enterprise, through such control of the bank accounts, theretofore solely in his name.

The decree entered flowed by necessity from the findings of the chancellor, based upon the testimony he heard, and from the conduct of Rubin not necessary here to be set forth. It was such, as the court below found, as to make the carrying on of the partnership business impossible.

Decree affirmed at appellant's cost.